IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2017 SEP 25 PM 2:27
STEPHAN HARRIS, CLERK
CHEYENNE

| | |
|---|---|
| Steven Drake<br>Plaintiff<br><br>V.S.<br><br>West Park Hospital and<br><br>Medical Care Provider Dr. Gregory McQue<br><br>Defendants<br><br>See Attached | Civil Action No. 17-CV-163 J<br><br>Judge. _____<br><br>**JURY TRAIL DEMANDED** |

---

**PURSUANT TO 42 U.S.C.S 1983 THE COURT HAS JURISDICTION** with reference to violation of Wyoming Statue §35-2-606, a violation of patient information by a medical provider without proper release to do so.

---

**COMES NOW**; Pro Se, Steven Drake ("Plaintiff") in the following constituting a claim against West Park Hospital ("Defendant"), and the Hospitals Medical Care Provider Gregory McCue ("Defendant"), pursuant to *Wyoming Statutes § 35-2-606(a)* titled-Disclosure of healthcare information by hospital stating; *"Except as authorized in Wyoming Statute 35-2-609, a hospital or an agent or employee of a hospital shall not disclose any hospital healthcare information about a patient to any other person without the patient's written authorization. A disclosure made under a patient's written authorization shall conform to the terms that authorization".*

## I.   FACTS

The following substantiates the facts and burden of proof through West Park Hospital Records; supplement statements including officer reports and affidavits from the Park County Sheriffs Department showing that during the period of May 4th 2016 through May 6th 2016 that said Defendant did in fact exchange confidential patient information with said Plaintiffs Probation and Parole Officer J.C. Lawson without proper supplemented release of information as stipulated by Wyoming Statue and that in fact Agent Lawson does not fall under the exception as stipulated in Wyoming Statutes §35-2-609 and §35-2-610.

Page 1 of 5

Evidentiary facts in the case are as follows;

1. On May 4th, 2016 Plaintiff was admitted into ICU at West Park Hospital via transport from Park County Detention Center for the purpose of detoxification from alcohol and morphine after being held in the custody of the Park County Detention Center for the previous almost 48 hours suffering from seizures and other symptoms of withdrawal incurred in the detoxification process. *(Plaintiffs Exhibit #1)*

2. In narrative to the happenings of May 6th 2016 as submitted by Deputy Nyreen Badge #J18 of the Park County Sheriffs office makes statement of facts that Agent Lawson of the Department of Corrections Division of Probation and Parole contacted Deputy Nyreen stating that <u>he had been</u> into contact with the Medical Care Provider (Gregory McCue MD) <u>receiving information to the release of Drake</u>. *(Plaintiffs Exhibit #2 Paragraphs 3)*.

3. In narrative to the happenings of May 6th 2016 as submitted by Deputy Kole badge #J25 of the Park County Sheriffs office makes statement of facts as to conversation between Sgt. McKinney (Park County Deputy) and Lori Urgrund stating in this narrative her own denial to <u>disclosure of information due to violation of HIPPA laws preventing medical staff from giving any information even if it's only seeing a patient leave the hospital</u>. *(Plaintiffs Exhibit #3 Paragraphs 7)*.

4. In discharge summary dictated by said Defendant Gregory McCue being a Medical Care Provider at West Park Hospital, Doctor McCue states in discharge summary that he had obtained permission from Plaintiff to contact his parole officer (Plaintiffs Exhibit #4).

5. Plaintiff upon request of medical information and records from West Park Hospital has never been presented with any signed release of information and has no recollection of giving said signed release to the said defendant in this case as stated in Plaintiffs Exhibit #4 of discharge summary as dictated by said defendant in this case thus showing proof that this is a false statement.

6. On November 1, 2016 parole board held a meeting at Wyoming Medium Correction Institution, ("WMCI"). Present were Parole board, Plaintiff and Defendant Parole officer JC Lawson on the phone from Cody Wyoming. JC Lawson makes testimony on Plaintiffs stay at West Park Hospital between the dates of May 4th 2016 and May 6th 2016.

JC Lawson makes statement that he had permission to obtain medical information from West Park Hospital. At no time did Plaintiff give JC Lawson permission to obtain information from West Park Hospital. This meeting was recorded by the Department of Corrections and must be requested by the courts under Wyoming Statute §7-13-409 (see attached motion for request of evidentiary records).

## *II. ARGUEMNT*

Plaintiff argues that the included facts in this case constitute a direct violation of Wyoming Statute §35-2-606(a) titled Disclosure of health care information as stated *"Except as authorized in W.S. §35-2-609, a hospital or an agent or employee of a hospital shall not disclose any hospital health care information about a patient to any other person without the patient's written authorization. A disclosure made under a patient's written authorization shall conform to the terms of that authorization.*

Plaintiff further argues that said Defendant has not been able to show proof of signed release by the Plaintiff as stipulated under Wyoming Statute §35-2-606(a) because no signed release exists in this matter and that without having a signed release by the Plaintiff that said Defendant violated the Plaintiffs rights to confidentiality of healthcare information.

Plaintiffs' final argument is in that a each patient should be able to have a trusting and safe professional relationship with each and every medical provider. The Plaintiff argues that with this blatant violation of his right and is left to wonder of how many other times this medical care provider has violated his and others rights through knowing and willfully discussing confidential medical information.

## *III. Conclusion*

The Plaintiff presents the facts and arguments in this case that the burden of proof has been shown that in fact said Defendant did knowing and/or willing violate Wyoming Statute §35-2-606 by exchanging in conversation that included information that was pertinent to the Plaintiffs' healthcare information with Wyoming Probation & Parole Agent J.C. Lawson.

For this the Plaintiff is requesting the courts awarding Nominal, Compensatory and /or Punitive damages in this case from both said Defendants in this case.

*Plaintiff*
*Steven Drake #28833*
*%Wyoming State Penitentiary*
*P.O. Box 400*
*Rawlings, Wyoming 82301*

I, Steven Drake (Plaintiff), have read and understand the provisions of the false swearing statute. I hereby certify under penalty of false swearing that the foregoing claim, including all of its attachments, if any, is true and accurate.

_____                               9-13-17
*Signature of Claimant* (to be signed before the Notary officer)          Date


**STATE OF WYOMING** )
                             ) SS
**COUNTY OF CARBON** )

Subscribed and sworn to before me, a Notary Officer, this 15 day of September, 2017.

_____
Notary Officer

                                                                Seal:



AUDIE JOE MARTINEZ - NOTARY PUBLIC
COUNTY OF CARBON    STATE OF WYOMING
MY COMMISSION EXPIRES APRIL 16, 2020

*Plaintiff*
Steven Drake #28833
%Wyoming State Penitentiary
P.O. Box 400
Rawlings, Wyoming 82301

*Defendants*
West Park Hospital
707 Sheridan Ave.
Cody Wyoming 82414

West Park Hospital
Medical Care Provider – Gregory McQue
707 Sheridan Ave.
Cody Wyoming 82414

# EXHIBIT

# 1



Page 1 of 3

This invoice reflects the dates below. If you have insurance, it has been billed. You will receive a statement for any balance after benefits have been applied. If you do not have insurance, you are responsible for these charges. Please pay in full within two weeks or call

**Responsible Party:**
Drake, Steven R
1720 Salsbury
Cody, WY 82414

Name: DRAKE, STEVEN R
Service Dates: 05/04/16 - 05/07/16

Account Number: A02236412
Bill Date: 06/19/17

| Insurance Coverage | Insurance Policy Number |
|---|---|
| MEDICARE CRITICAL ACCESS | 388623361A |

| Service Date | Code | Description | Quantity | Amount |
|---|---|---|---|---|
| | | **012x Room & Board - Semi-private** | | |
| 05/05/16 | 3100000145 | ROOM ACU | 1 | 1,541.05 |
| | | ROOM A05/SP | | |
| | | | | 1,541.05 |
| | | **020x Intensive Care Init** | | |
| 05/04/16 | 3200000125 | ROOM CCU | 1 | 4,233.80 |
| | | ROOM C32/CCU | | |
| | | | | 4,233.80 |

| Estimated Insurance Due | |
|---|---|
| MEDICARE CRITICAL ACCESS | 0.00 |

| Total Charges | 14,039.43 |
|---|---|
| Total Credits: | -13,005.70 |
| Total Due: | 1,033.73 |
| Estimated Insurance Coverage: | 0.00 |
| Your Estimated Amount Due: | 1,033.73 |

# EXHIBIT

# 2


On May 6th 2016 I returned back to duty working the 0700-1900 shift after having 3 days off. I was ... I read that inmate STEVEN DRAKE which we booked in prior to our days off had been transported to the West Park Hospital due to having seizures from detoxing off of alcohol and morphine which we have dealt with him numerous times in previous bookings.

J.C. Lawson ( Drake's probation officer) called me and asked if DRAKE was still at the hospital and was a deputy with him. I told J.C. that it was my Monday and I was trying to get caught up on what had happened while I was on days off but from what I knew at that point was that DRAKE was still at the hospital and that a deputy was not there with him. J.C. asked why there wasn't a deputy there and I informed him that another squad had handled that as I was not here and that they had taken care of what needed to be taken care of and that Sheriff Scott Steward, Lt. Tod Larson and County Attorney Bryan Skoric were aware of what was going as far as I knew with the information I had at that time. J.C. asked that I contact him of changes or new information in regards to DRAKE which I told him I would do.

J.C. called back later and said that he had talked to DRAKE'S doctor and that he had informed him that DRAKE would be released at 1400 and he could have law enforcement pick DRAKE up from the hospital and transport him back to the Park County Detention Center. J.C. asked if I would be able to send a deputy over to the hospital to transport DRAKE back to the Park County Detention Center at 1400. I informed that I would send a deputy over to pick him up. We both agreed to contact each other of any changes.

At about 1345 I sent Deputy Kole Richmond to the West Park Hospital to pick up DRAKE for transport back to the Park County Detention Center. Deputy Richmond arrived at the hospital prior to DRAKE'S scheduled release time and asked where DRAKE was at. Hospital staff said they didn't have a patient there under that name. Deputy Richmond advised them that DRAKE was an inmate of the Park County Detention Center and that he was to transport him back. Hospital staff would only tell him that didn't have anyone there by that name but he did leave his jail issued clothes there. Deputy Richmond contacted me on the radio that DRAKE had left the hospital and that the hospital would not cooperate with him on providing any information on when DRAKE left or what he was wearing or if anyone had picked him up. I told Deputy Richmond to return back to the Park County Detention Center.

I contacted Sheriff Steward and informed him of the situation and asked him what course of action he would like to take. Sheriff Steward said he would contact County Attorney Bryan Skoric and asked me to contact a patrol deputy to go check at DRAKE'S house for him and contact J.C. Lawson and advise him of the situation as Sheriff Steward was off duty at this time.

I contacted Patrol Sgt. Chad McKinney and informed him of the situation and that Sheriff Steward had requested that I send a patrol deputy to check DRAKE'S home to see if he was there. I told Sgt. McKinney that he may want to contact Sheriff Steward to confirm that's what he still wanted done and if he had any new information from County Attorney Skoric. Sgt. McKinney said he would call Sheriff Steward.

I contacted J.C. Lawson and informed him of the situation and that I had contacted Sheriff Steward and what he had me doing about it. J.C. said he just had small section of his yard to finish mowing then he

# EXHIBIT

# 3

## PARK COUNTY SHERIFF'S OFFICE
1402 RIVER VIEW DR   CODY, WY 82414   307-527-8700
**SUPPLEMENT 3**

Page 1

16-458

On 5/6/2016, I was performing my daily duties in the Park County Detention Center (PCDC). At approximately 1345 my shift Sgt. Dave Nyreen asked me to go to the West Park Hospital located in Cody WY and pick up Steven Drake: DOB 8/1/1955. It was explained to me by Sgt. Nyreen that Drake was still in the custody of the PCDC but had been taken to the hospital for medical treatment and that Drake was going to be released from the hospital at 1400 and he needed to be transported back to the Detention Center.

I immediately left the Detention Center and went to the hospital in a county vehicle. When I arrived at the hospital I asked one of the medical staff where I could find Drake. I was informed that Drake was on the second floor. I took the stairs to the second floor and went to a nurses station and told one of the medical staff behind the counter (later identified as Deidre Clemens) that I was there to pick up Drake. One of the other medical staff there standing at the counter (later identified as Lori Urgrund) said to me that they did not have any body there by the name but that they had some orange clothes that I could take back with me and pointed at a bag on the counter that did have orange clothes in it. By this time it was approximately 1400. I went and picked up the bag and asked when Drake had left, I was told by the staff (Lori Urgrund) that all they could tell me was that they did not have anyone there by that name. I asked if they could give me anything confirming that Drake wasn't there. I was told by staff (Lori Urgrund) again that they could only tell me that they did not have a patient there by that name.

I got on my radio and informed the Detention Center of the situation. I was told over the radio to come back to the Detention Center, which I did.

When I got back at the Detention center I was asked if I knew the names of the medical staff that I talked to about Drake but I did not know any names of the medical staff at that time.

While in booking I received a call from Patrol Sgt. Chad McKinney asking if Drake had any house keys in his property that was at the jail. So Deputy Lisa Randol and myself went and looked in Drake's property and found what appeared to be house keys. Deputy Randol then talked to Sgt. McKinney on the phone about the keys that we had found and they were provided to patrol for the purpose of entering Drake's house to attempt of finding Drake and bring him back to the Detention Center. Shortly after this Drake was found in his house and was brought back to the Detention Center.

Later I was asked to go back to the hospital with Sgt. McKinney so that I could identify the medical staff that I talked to about Drake. When we were at the hospital we got the names of two medical staff that I had talked to about Drake which were Deirdre Clemens and Lori Urgrund.

Lori Urgrund talked to Sgt. Mckinney about how they as medical staff can not tell us anything about anybody that is a patient in the hospital. Lori Urgrund told us HIPPA laws prevent medical staff from giving any information even if it's only medical staff seeing a patient leave the hospital. During the conversation Sgt. McKinney and myself were told that HIPPA prevents medical staff from reporting gunshot wounds. I brought up a scenario of a child getting molested and or abused by their father and asked if they as medical staff could report that to law enforcement, to which the reply was that they (medical staff) would call their lawyer about something like that.

After talking to the hospital medical staff Sgt. McKinney took me back to the PCDC where I

| Prepared By: | | Date: | Approved By: | | Date: |
|---|---|---|---|---|---|
| J25 | RICHMOND, KOLE | 05/07/2016 | J18 | NYREEN, DAVE | 05/07/2016 |

0000011

# EXHIBIT

# 4

Patient: **DRAKE,STEVEN R**
Acct #: **A02236412**
Med Rec #: **W0111956**
Report: **Discharge Summary 0506-0037 continued**

PLAN:
Discharge was discussed with the patient and I obtained his permission to contact his parole officer, so that he could transition back to jail pending ongoing alcohol rehabilitation through the justice system. He apparently rethought this decision and left AMA before law enforcement came to pick him
up. He will follow up with his parole officer p.r.n. and hopefully further rehabilitation treatment can be obtained through the justice system. The letter from Dr Ribnic was received, and forwarded to Heath Steele, director of VOA program in Sheridan, at hsteele@voanr.org.


GM/dsk/fi   6591842


<DOS:20160504>



Dictated By: McCue MD,Gregory
Electronically Signed By: <Electronically signed by Gregory McCue MD>
<<Signature on File>>
Signed Date/Time: 05/08/16 0822

Dictated Date/Time: 05/06/16 1705 EST
Transcribed Date/Time: 05/06/16 1757 EST
Imported Date/Time: 05/06/16 1632 MST

CC: ~

Steven D
c/o WSP
P.O. Box 400
Rawlins WY 82301

INMATE MAIL

Office of the Clerk of Court
United States District Court of Wyoming
2120 Capitol Ave. Room 2131
Cheyenne WY 82001

RECEIVED
SEP 21 2017

THIS IS AN UNCENSORED LETTER
FROM AN INMATE AT THE
WYOMING STATE PENITENTIARY



Please Post
US POSTAGE >> PITNEY BOWES
ZIP 82301 $ 001.61⁰
02 1W
0001384153 SEP 21 2017